Argued and submitted October 8, 1990, supplemental judgment modified; affirmed as modified March 20, 1991

In the Matter of the Marriage of
Robert W. SCHONING,
*Appellant,*
*and*
Barbara A. SCHONING,
*Respondent.*
(D8006-65003; CA A63523)
807 P2d 820

R. Tim Willis, Corvallis, argued the cause for appellant. With him on the brief was Fenner, Barnhisel, Willis & Barlow, Corvallis.

John A. Berge, Bend, argued the cause for respondent. With him on the brief were Bradley D. Fancher and Gray, Fancher, Holmes, Hurley, Bryant & Lovlien, Bend.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Husband appeals a supplemental dissolution judgment awarding wife 22 percent of his military pension. On *de novo* review, ORS 19.125(3), we modify the judgment.

Husband enlisted in the Marine Corps Reserve in 1942 and served an extended term of active duty until January, 1952, after which he continued reserve duty, while also maintaining civilian employment. The parties were married on October 4, 1952. Husband retired from the reserves in 1975, and the parties' marriage was dissolved in early 1982. Under the judgment, the parties each received substantially one-half of the marital assets subject to division, including husband's civilian pensions. However, the court did not consider his military pension because, under the federal law as it then existed, it was not subject to division. *McCarty and McCarty,* 453 US 210, 101 S Ct 2728, 69 L Ed 2d 589 (1981). Husband started receiving his military pension in September, 1983.

On September 8, 1982, Congress passed the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 USC § 1401 *et seq,* which became effective February 1, 1983.[1] USFSPA nullified *McCarty and McCarty, supra,* so that the inequities of that decision could be rectified. *See* 3 US Code Cong & Adm News 1596 *et seq* (1982). On December 31, 1985, wife moved to modify the dissolution judgment to divide the military pension. After a hearing, the trial court denied the motion, and we affirmed without opinion. *Schoning and Schoning,* 83 Or App 272, 730 P2d 44 (1986), *rev den* 303 Or 74 (1987).

In 1987, the Oregon legislature reconciled state and federal law by passing *former* Oregon Laws 1987, chapter 188, which provided, in part:

"(1) A decree of marital annulment, dissolution or separation that became final on or after June 25, 1981, and before February 1, 1983, *may be modified to include a division of*

---

[1] 10 USC § 1408(c)(1) provides:

"Subject to the limitations of this section, a court *may* treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." (Emphasis supplied.)

*military retirement benefits* payable on or after February 1, 1983. The decree shall be modified in a manner consistent with federal law and the laws of this state as they have existed since February 1, 1983.

"(2)   Modification of a decree under this section may be granted whether or not the decree * * * assumed in any manner that military pension benefits were not, as of the date on which the decree became final, divisible marital property.

"(3)   Any proceeding to modify a decree of marital annulment, dissolution or separation under this section shall be commenced before January 1, 1989.

"(4)   This section shall remain in effect only until January 1, 1989." (Emphasis supplied.)

In 1988, wife again moved to divide the military pension, and the trial court granted the motion. The court determined that 44 percent of the pension was accumulated during the marriage and was, therefore, a marital asset under *Richardson and Richardson*, 307 Or 370, 769 P2d 179 (1989). Pursuant to chapter 188, the court awarded wife 22 percent of the pension, retroactive to September, 1983.

■       Husband appeals on several grounds. He concedes that, under chapter 188, the trial court had the authority to modify the original dissolution judgment to include a division of a military pension. However, he argues that the statute applies only to situations in which the military pension was the only or primary asset of the marriage, so that failure to divide the pension denied the non-military spouse economic security. According to husband, because the original dissolution judgment provided for a division of significant assets other than the military pension, it does not present the type of inequitable situation intended to be covered by the statute. He contends that, because the statute fails to state the equitable factors that a court must consider in deciding whether to modify a decree, there is an ambiguity requiring construction on the basis of legislative history.

Courts are not at liberty to reevaluate a statutory scheme and fill in perceived legislative omissions. ORS 174.010; *Portland Adventist Medical Center v. Sheffield*, 303 Or 197, 200, 735 P2d 371 (1987). The statute unequivocally applies to any "decree of marital annulment, dissolution or separation that became final on or after June 25, 1981, and

before February 1, 1983." That is consistent with 10 USC § 1408(c)(1), which authorizes a court to divide military pensions payable after June 25, 1981. Both statutes give courts discretion to determine whether division of a military pension is appropriate in a given case, and the sole limitation is that only judgments that became final after the decision in *McCarty and McCarty, supra,* may be modified.

Neither statute contains a limitation as to which situations are appropriate, or what other types of assets must be involved, for modification of previous property divisions. If the Oregon legislature had intended that the statute apply only to specific situations other than those generally identified in chapter 188, it could have so provided. Because the statute is clear and unambiguous and literal application would not produce an absurd or unreasonable result, we need not resort to extrinsic evidence of legislative intent or rules of statutory construction. *Satterfield v. Satterfield,* 292 Or 780, 782-83, 643 P2d 336 (1982).

Husband also concedes that the statute provides for retroactive division of military pensions. However, he argues that, even if the modified division were equitable, the trial court had no authority to apply the statute retroactively to September, 1983, the date on which he started receiving pension payments. According to him, the division should apply only to payments made after the date on which the motion to modify was filed.[2]

ORS 107.135 provides, in part:

"(4) Any termination or reduction of *spousal support* * * * *shall not be retroactive,* but shall be prospective from the date such order is issued by the court.

"(5) The decree is a final judgment as to any instalment or payment of money which has accrued up to the time either party makes a motion to set aside, alter or modify the decree, and the court does not have the power to set aside, alter or modify such decree, or any portion thereof, which provides for

---

[2] The two Oregon decisions dealing with chapter 188 have not specifically addressed this issue. *See Valley and Valley,* 97 Or App 95, 775 P2d 332, *on reconsideration* 99 Or App 252, 781 P2d 1219 (1989), *rev den* 309 Or 522 (1990); *Dee and Dee,* 96 Or App 252, 772 P2d 444 (1989).

any payment of money, either for minor children or the support of a party, which has accrued prior to the filing of such motion." (Emphasis supplied.)

Husband analogizes the prohibitions in those sections against retroactive modification of support orders to argue that chapter 188 does not authorize a court to modify property divisions made before the filing date of the motion to modify. That claim is without any merit whatsoever.

■■ In the alternative, husband contends that the division of his military pension should be retroactive only to 1988, because he relied on the finality of the dissolution judgment and, therefore, was not put on notice of the possibility of a division until the motion to modify was filed. Although a dissolution had become "final," chapter 188 authorized a court to modify a property division retroactively to include military pensions. *Res judicata* operates as a bar only to matters actually raised or that *could have* been raised in the previous litigation. As to matters that arise subsequently, the judgment is not *res judicata.* ORS 43.130(2);[3] *State v. Ratliff,* 304 Or 254, 257 n 4, 744 P2d 247 (1987). Husband admits that chapter 188 "creates a new action to consider the division of a military pension," because federal law at the time of the original judgment precluded wife from raising the claim. Thus, by husband's own argument, wife's claim for his military pension is not barred by *res judicata. See Powell v. Powell,* 703 SW2d 434, 436 (Tex Civ App 10 Dist 1985).

■ Paragraph 7 of the supplemental judgment provides:

"Respondent [wife] is awarded Judgment against petitioner [husband] in an amount *currently unascertainable representing 22% of petitioner's Marine Corps pension* from the date it was first paid up to the date respondent receives her first direct payment from the Marine Corps. *As soon as the*

---

[3] ORS 43.130 provides, in part:

"The effect of a judgment, decree or final order in an action, suit or proceeding before a court or judge of this state or of the United States, having jurisdiction is as follows:

"* * * * *

"(2) * * * [T]he judgment, decree or order is, in respect to the matter directly determined, conclusive between the parties, their representatives and their successors in interest by title subsequent to the commencement of the action, suit or proceeding, litigating for the same thing, under the same title and in the same capacity."

*amount is ascertainable, respondent shall move the court* for an order allowing Judgment against petitioner in that amount." (Emphasis supplied.)

It is not readily apparent from that provision whether the trial court, when it ascertains the amount due, contemplates dividing the gross amount received by husband or the net, after-tax amount received by him. Husband contends that, because he has already paid the entire tax liability on the gross amount received, it would be improper to award wife 22 percent of the gross amount, free of any tax liability.

Wife contends that the only issue before the court is whether, under the facts of this case, it would be equitable to allow her to receive a portion of the military pension. According to her, if husband is now required to amend his returns in order to recover a portion of the tax paid on his military pension, that is a matter solely between him and the appropriate revenue authority.

We agree that the issue before us is whether to divide the military pension, and we have resolved that issue in wife's favor. However, we are persuaded that, in order to make a fair and complete resolution of the amounts to which wife is entitled, it is necessary to consider that husband has already paid taxes on the amounts received by him. It is undisputed that wife will be responsible for the tax liability on her portion of the payments that she will receive in the future.

It is apparent from the supplemental judgment that, when the information became available to ascertain the amount due wife, the trial court contemplated that the parties would return to court to resolve that issue. When they do, the trial court must then consider that husband has paid the entire tax on payments received by him. Accordingly, we modify paragraph 7 of the supplemental judgment to read:

"Respondent is awarded Judgment against petitioner in an amount currently unascertainable representing 22% of petitioner's Marine Corps pension from the date it was first paid up to the date respondent receives her first direct payment from the Marine Corps. In ascertaining the amount of the Judgment, the court shall consider the tax consequences to both parties on the property division. As soon as the amount is ascertainable, respondent shall move the court for

an order allowing Judgment against petitioner in that amount."

Supplemental judgment modified; affirmed as modified. No costs to either party.