# IN THE OREGON TAX COURT
## MAGISTRATE DIVISION

Donald Richard LEE,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC-MD 991339C)

John N. Hart, Plaintiff, filed the briefs *pro se*.

Dennis Ault, Department of Revenue, filed the briefs for Defendant.

Decision for Defendant rendered May 8, 2000.

### DAN ROBINSON, Magistrate.

Plaintiff appealed Defendant's Notice of Refund Adjustment, issued July 16, 1999, based on a determination that wages from Spooner Mechanical Contractors, Inc., for 1998 are not exempt from taxation under ORS 316.127(8)[1]

---

[1] All references to the Oregon Revised Statutes (ORS) are to 1999.

because Plaintiff is not a federal employee. The December 22, 1999, case management conference was converted to trial based on Defendant's agreement to Plaintiff's request for accelerated processing. Plaintiff represented himself. Defendant appeared through Paul Shonka and Mike Halter, auditors with the Oregon Department of Revenue.

## STATEMENT OF FACTS

Plaintiff lives in Washington and works at the Bonneville Locke and Dam in Oregon, at Pump House 1. He was employed in 1998 by Spooner Mechanical Contractors, Inc., a Washington employer. Plaintiff's job was described as temporary, although at the time of trial he had worked at the dam for more than two years and may well work there for another 10 years. Plaintiff was issued a badge by the United States Army Corps of Engineers (Corps) and worked alongside Corps employees, performing the same tasks as those workers. Plaintiff was subject to the same rules and regulations as Corps employees regarding the duties he performed. Corps employees work directly for the federal government.

Plaintiff states in his appeal letter "I work for a contractor that bills the Federal Government for the services performed and then takes the money and disperses it to the various vendors and personal [sic] involved." Plaintiff believes he falls within the spirit, if not the letter, of the law and should be treated the same as his federal counterparts for purposes of taxation. Plaintiff also challenges the state law as violative of the Equal Protection Clause of the United States Constitution and the Privileges and Immunities Clause of the Oregon Constitution.

## ANALYSIS

■     ORS 316.127(1)(a) imposes a tax on the income of nonresidents "derived from or connected with sources in this state." Although Plaintiff's income is derived from sources within this state, he argues that his wages are nonetheless exempt from taxation by Oregon under subsection (8) of the same statute because he is an employee of the United States and otherwise meets the requirements of the law. The statute provides:

"(8)   Compensation paid **by the United States** to a nonresident for services performed by the nonresident **as an employee of the United States** at a hydroelectric facility does not constitute income derived from sources within this state if the hydroelectric facility:

"(a)   Is owned by the United States;

"(b)   Is located on the Columbia River; and

"(c)   Contains portions located within both this state and another state."

ORS 316.127 (emphasis added).

Subsection (8) was added to ORS 316.127 in 1997 and was apparently prompted by federal legislation amending Title 4, section 111, of the United States Code. The Oregon law is nearly identical to the federal statute.[2]

There is no dispute as to whether the statute applies to the Bonneville Locke and Dam. That is, the parties acknowledge that the Bonneville Dam "[i]s owned by the United States," "[i]s located on the Columbia River," and "[c]ontains portions located within both [Oregon] and another state." ORS 316.127(8)(a)-(c).

Plaintiff's principle argument is that he falls within the scope of the law. Defendant contends that Plaintiff is not

---

[2] That relevant portion of 4 USC section 111 (1994) provides:

"(a)   General rule. [-] The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States, a territory or possession or political subdivision thereof, the government of the District of Columbia, or an agency or instrumentality of one or more of the foregoing, by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.

"(b)   Treatment of certain Federal employees employed at Federal hydroelectric facilities located on the Columbia River. [-] Pay or compensation **paid by the United States** for personal services as an **employee of the United States** at a hydroelectric facility - -

"(1)   which is owned by the United States;

"(2)   which is located on the Columbia River; and

"(3)   portions of which are within the States of Oregon and Washington, shall be subject to taxation by the State or any political subdivision thereof of which such employee is a resident."

(Emphasis added.)

a federal employee and therefore does not fall within the statutory exemption. The court agrees. Moreover, Plaintiff's wages are not "paid by the United States." ORS 316.127(8). The court will first address those claims and then turn to the constitutional claims.

## THE SCOPE OF THE LAW

Plaintiff submitted a number of exhibits in support of his position that he is covered by the law. He sincerely believes the circumstances involved warrant a determination that his wages are not subject to taxation by Oregon. Much reliance was placed on Plaintiff's Exhibit 3, which is a printout of a document downloaded from the federal government's legislative Internet site.[3] Plaintiff makes a number of arguments from that exhibit. Plaintiff's arguments are tied predominantly to the federal statute.

Plaintiff contends that the federal legislation at issue applies to "contractors" and that other nonfederal employees are exempt from certain state taxation. Both arguments fail. The relevant portion of the exhibit referenced by Plaintiff at trial provides as follows:

"Notwithstanding *Graves* [implied immunity of federal government and its properties, functions and instrumentalities from taxation no longer recognized[4]], however, the Supreme Court has upheld the power of Congress to grant express tax immunity to its employees **and contractors** when it determines such immunity is necessary to carry out an enumerated constitutional power." (Emphasis added.)

That Congress may grant tax immunity to contractors "when it determines such immunity is necessary" does not mean Congress has in this instance done so. The federal

---

[3] The site is located at: http://thomas.loc.gov.

The following explanation of that site is found under "About Thomas" at the bottom of the Home page:

"BACKGROUND

"Acting under the directive of the leadership of the 104th Congress to make Federal legislative information freely available to the Internet public, a Library of Congress team brought the THOMAS World Wide Web system online in January 1995, at the inception of the 104th Congress."

[4] *Graves v. People of State of New York ex rel O'Keefe*, 306 US 466, 59 S Ct 595, 83 L Ed 927 (1939).

law at issue, like its state counterpart, applies only to federal employees paid by the United States. Neither law (federal nor state) references contractors.

Plaintiff is correct in pointing out that Congress has expressly exempted from state taxation the income of certain nonfederal employees, including employees who fall within the Amtrak Reauthorization and Improvement Act.[5] If anything, the fact that Congress has in certain instances expressly limited the state's power to tax some employees strengthens Defendant's argument that the law at issue does not so provide.

Plaintiff next points to language on page 4 of Exhibit 3 that provides:

"HR 1953 applies to unique geographical areas owned by the federal government sitting astride states with differing taxation schemes (one state with an income tax, the other without one). Because of the isolated nature and geographical idiosyncrasies of the federal facilities involved, a small number of **workers** enter the facility from their home state but, because these facilities are bisected by state boundaries, their work takes them over the state line and brings them under the taxing authority of the neighboring state. As a result, these **workers** must pay income taxes to that neighboring state even though they never actually use its roads or other services, nor are they entitled to avail themselves of benefits from that state on the same basis as residents."[6]

(Emphasis added.)

■ The above quoted language, standing alone, suggests Congress was concerned with all workers at those facilities and not merely federal workers. The legislation, however, did not encompass all hydroelectric facility employees. Whether

---

[5] The Act provides, in part:

"No part of the compensation paid by a motor carrier * * * to an employee who performs regularly assigned duties in 2 or more States as such an employee with respect to a motor vehicle shall be subject to the income tax laws of any State or subdivision of that State, other than the State or subdivision thereof of the employee's residence." 49 USC § 14503(a)(1). That statute was originally codified at 49 USC section 11504(b)(1).

[6] HR Rep No 203, 105th Cong, 1st Sess (1997), 3.

the legislation inadvertently failed to include all workers at hydroelectric facilities on the Columbia River is irrelevant. The language of both the federal and state laws is clear and unambiguous. To be exempt from taxation by Oregon, Plaintiff must be an employee of, and paid by, the United States government. Plaintiff is asking the court to add something to the statute that he believes the legislature inadvertently omitted. The court is expressly prohibited from either adding to or subtracting from statutory language, particularly where the law is unambiguous. ORS 174.010.[7] "[C]ourts are not at liberty to reevaluate a statutory scheme and fill in perceived legislative omissions." *Schoning and Schoning*, 106 Or App 399, 402, 807 P2d 820 (1991).

■      Plaintiff next drew the court's attention to page 4 of his Exhibit 3, which includes what appears to be an excerpt of a Congressional committee hearing or floor debate on the federal law. The language refers to "Washington residents" rather than "federal employees residing in Washington."[8] Plaintiff contends that language evidences an understanding by Congress that Oregon's law would apply to all Washington residents working at the Bonneville dam. Again, whether the United States Congress itself intended to exempt all employee's income or understood Oregon to do so is unknown, but the language of the statutes (both federal and state) does not so provide. That fact ends the court's inquiry.

More language further down on the same page of the exhibit, also pointed to by Plaintiff, suggests all employees (federal and nonfederal) working at Fort Campbell, which is located on the border of Kentucky and Tennessee, are exempt from taxation by other than their state of residence.[9] If those

---

[7] ORS 174.010 provides:

"In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."

[8] The language appears in a footnote and provides as follows:

"The Committee notes with approval the passage by the Oregon legislature, after some delay, of S.B. 998 addressing the situation of **Washington residents** working at federal hydroelectric facilities on the Columbia River."

HR Rep No 203, 105th Cong, 1st Sess (1997), n 13 (emphasis added).

[9] The referenced language states:

nonfederal contract employees are exempt from certain state income taxation it is because federal legislation so provides and such legislation has no bearing on this case. The discussion in the exhibit strongly suggests that Congress, or at least some members of that body, were concerned with civilian employees at that federal facility who performed the same work as federal government employees, but similar concern was not expressed in the federal legislation affecting the federal dams between Oregon and Washington. Nor did Oregon exempt nonfederal employees.

The court recognizes that Plaintiff is issued a badge by the Corps and works alongside federal employees living in Washington who perform similar duties and that their wages are exempt from taxation by Oregon although his are not, and that this situation seems unfair. It is also costly. However, the law specifically grants preferential treatment to those federal employees but not to Plaintiff.

## CONSTITUTIONAL CHALLENGES

Turning to Plaintiff's constitutional claims, Plaintiff asserts that Oregon's statute violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Privileges and Immunities Clause of the Oregon Constitution. The court rejects both arguments.

### *Equal Protection*

■ Section 1 of the Fourteenth Amendment provides, in relevant part: "nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction equal protection of the laws." The Oregon Supreme Court in *Huckaba v. Johnson*, 281 Or 23, 573 P2d 305 (1978), quoted with approval from a decision it rendered some 17 years earlier, as follows:

" 'The equal protection of the laws required by the Fourteenth Amendment does not prevent states from resorting

---

"With respect to Fort Campbell, the bill applies to 'employee[s]' because many of those working at that federal facility are civilians not employed by, but rather contracted to, the Federal government. These contract employees perform similar services and, thus are similarly situated, as the federal employees with whom they work."

HR Rep No 203, 105th Cong, 1st Sess (1997), 3.

to classifications for the purposes of legislation and they have a wide range of discretion in that regard (*Safeway Stores v. Portland*, 149 Or 581, 595, 42 P2d 162; *Wittenberg v. Mutton*, 203 Or 438, 446, 280 P2d 359) if the classification is reasonable, not arbitrary and rests upon some ground of difference having a fair and substantial relation to the object of the legislation, so that persons similarly situated shall be treated alike. **This latitude is notably wide in classifications for purposes of taxation.** *Royster Guano Co. v. Virginia*, 253 US 412, 40 S Ct 560, 64 L Ed 989, 990. * * *.' "

*Huckaba*, 281 Or at 25-26 (internal citation omitted; emphasis added). *Huckaba* dealt with an amendment to an Oregon statute extending a deduction for retirement benefits received by federal civil service retirees to include military retirees but limiting the benefit to the latter group until they reached age 65. In discussing the Equal Protection Clause, the court stated:

"What is required in assessing a constitutional challenge to classification for tax benefit is a review of the grounds for the classification to determine if it rests upon a rational basis. The legislature may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is **any conceivable state of facts which would support it**. It, however, is not sufficient to merely point out differences between the groups of taxpayers for divergent treatment. The differences justifying the attempted classification must bear a reasonable relationship to the legislative purpose. The legislative power to create a classification implies the authority to subclassify persons included in the general class if there is a rational basis for making this further distinction."

*Huckaba*, 281 Or at 26 (internal citations omitted; emphasis added). In upholding the statute, the court noted "[t]here are differences between the two retirement systems of a substantial nature that rationally relate to the purposes of the tax modification statute." *Id*. at 28.[10]

---

[10] The court noted that most people join the military at age 18 and are eligible to retire after 20 years. They then go on to establish another full career and receive another pension.

■ The Oregon Tax Court echoed the Supreme Court's statement that "[u]nder the Equal Protection Clause a discriminatory classification will be upheld 'if any state of facts reasonably can be conceived that would sustain it.'" *Simpson v. Dept. of Rev.*, 12 OTR 455, 458 (1993), *aff'd*, 318 Or 579, 870 P2d 824 (1994), *cert den*, 513 US 868, 115 S Ct 189, 130 L Ed 2d 122 (1994); *citing Allied Stores of Ohio v. Bowers*, 358 US 522, 528, 79 S Ct 437, 3 L Ed 2d 480 (1959). *Simpson* upheld an Oregon statute exempting from state income taxes the retirement benefits paid by the State of Oregon but taxing the benefits paid by the State of Alaska against a claim the law ran afoul of the federal Equal Protection Clause. The legitimate purpose of Oregon's statute was to reduce payroll costs and the law achieved that objective. *Id.* at 457.

■ The United States Supreme Court has said that "inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitations." *Carmichael v. Southern Coal & Coke Co.*, 301 US 495, 509, 57 S Ct 868, 81 L Ed 1245 (1937). The court explained, in part:

> "[i]t is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. **Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation.** * * * A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it."

*Id.* (emphasis added).

Some 25 years later the same Court addressed the state's freedom to tax and stated:

> "There is a **presumption of constitutionality** which can be overcome 'only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes.' * * * 'The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.'"

*Lehnhausen v. Lake Shore Auto Parts Co.*, 410 US 356, 364, 93 S Ct 1001, 35 L Ed 2d 351 (1973), *reh'g den,* 411 US 910, 93 S Ct 1523, 36 L Ed 2d 200 (1973), *and reh'g den,* 411 US 910, 93 S Ct 1523, 36 L Ed 2d 201 (1973), *and on remand,* 54 Ill 2d 237, 296 NE2d 342 (1973), *cert den,* 414 US 1039, 94 S Ct 539, 38 L Ed 2d 329 (1973) (internal citation omitted; emphasis added).

The question, then, is whether there is a rational basis for the state's law. *Huckaba,* 281 Or at 26. The equal protection issue was not strongly pressed by Plaintiff and received little attention by either party at trial. Certainly Plaintiff did not "negative every conceivable basis which might support [the law]." *Lehnhausen,* 410 US at 364.

■     Looking at Oregon's tax scheme, generally speaking, the state taxes the income of all nonresidents earned within this state. ORS 316.127. The collection of revenue through an income tax system is a legitimate state interest and nonresidents working in Oregon have a sufficient nexus to this state to justify the tax. Congress, however, was exploring legislation that would dictate how Oregon could tax certain nonresidents. The focus was on federal employees working on hydroelectric facilities on the Columbia River. Under the Supremacy Clause, US Const, Art VI, cl 2,[11] the federal law, once passed, would have preempted Oregon from taxing those persons covered by the law. According to legislative history, Oregon did not want "the federal government dictating to them how to handle state income tax."[12] The purpose was

---

[11] The Supremacy Clause of Article VI of the United States Constitution provides:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

[12] The exemption is "necessary to head off federal legislation, which will do this for us if we don't act first." Tape Recording, House Revenue Committee, SB 998, June 12, 1997, Tape 214, Side A (statement of Ed Waters, Economist).

This bill was introduced at the request of the Department of Revenue based on an issue the federal government had with Oregon's taxation of federal workers at federal institutions. *Id.* at 115 (statements of Susan Browning, Department of Revenue). The Department of Revenue wanted to include this to avoid having the federal government dictating to them how to handle state income tax. *Id.* They wanted to preclude having the federal government interceding in Oregon taxation. *Id.*

to prevent "having the federal government interceding in Oregon taxation."[13] By amending its statute, Oregon narrowly addressed Congress' concern for the taxation of its employees and in so doing maintained control of its tax system. The mechanism chosen reasonably relates to the state's legitimate interest. The distinction has a rational basis. *Carmichael*, 301 US at 509; *Huckaba*, 281 Or at 26.

Given that true "equality" is not required, that the law is presumed constitutional, that considerable latitude is given to classifications for tax purposes, that Plaintiff must negative every conceivable basis which might support the law, etc., the court cannot find a violation of equal protection.

There are other conceivable reasons for the state's limited exemption. The legislature felt it was reasonable to exempt employees of the United States because the tax infringed on the federal government. Federal employees working at the federal facility and moving between the two states throughout the day would be subject to tax by Oregon on part of their wages (those earned in Oregon). That would require the federal government to track the movement of its employees throughout the day in order to determine how much time they spent in Oregon so that it could withhold Oregon taxes. Given that plausible reason for congressional action, the federal law is obviously valid. Short of repealing the tax against nonresidents entirely, the federal government (Congress), and the state legislature, had to draw the line somewhere. They did so by exempting federal employees at certain hydroelectric facilities.

Although those reasons are mere conjecture, the Court elsewhere has said:

> "Where there are 'plausible reasons' for Congress' action, 'our inquiry is at an end.' *United States Railroad Retirement Bd. v. Fritz, supra*, 449 US at 179, 101 S Ct at 461. **This standard of review is a paradigm of judicial restraint**. 'The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that

---

[13] *See* footnote 10 above.

judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted.' "

*FCC v. Beach Communications, Inc.*, 508 US 307, 313-14, 113 S Ct 2096, 124 L Ed 2d 211 (1993) (citation omitted; emphasis added).

■　Although the legislature could have extended the exemption as Plaintiff demands, it was not required to do so. By exempting the federal workers from taxation by other than their state of residence Congress, and the State of Oregon, acted in a narrow fashion to further legitimate objectives.

*Privileges and Immunities*

■　Article I, section 20, of the Oregon Constitution provides that "[n]o law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens." The provision prohibits "the abuse of governmental authority to provide special privileges or immunities for favored individuals or classes." *Hale v. Port of Portland*, 308 Or 508, 524-25, 783 P2d 506 (1989). The state statute here attacked grants limited immunity from taxation to certain nonresidents.

> "The controlling principles which guide the courts in determining questions of alleged unconstitutional discrimination or class legislation are the same whether it is the equal protection clause of the Fourteenth Amendment of the Constitution of the United States which is invoked, or the privileges and immunities provision in Art I, § 20 of the Oregon Constitution. **Fundamentally, classification is a matter committed to the discretion of the legislature and the courts will not interfere with the legislative judgment unless it is palpably arbitrary.**"

*Plummer v. Donald M. Drake Co.*, 212 Or 430, 437, 320 P2d 245 (1958) (emphasis added).

　　Thus the analysis under Oregon's Privileges and Immunities Clause is essentially the same as that under the Equal Protection Clause and "[t]he Oregon Supreme Court enunciated a test of the widest possible latitude and deference for resolving equal protection challenges to tax legislation in *Garbade and Boynton v. City of Portland*, 188 Or 158,

214 P2d 1000 (1950)." *Jarvill v. City of Eugene*, 40 Or App 185, 194, 594 P2d 1261 (1979).

The distinction between federal hydroelectric facility employees and other nonresidents, established by amendment to ORS 316.127, is not arbitrary and can be justified on various legitimate grounds. The law, therefore, withstands judicial scrutiny under Oregon's Privileges and Immunity Clause. There are national concerns about the extent to which the state can indirectly burden the federal government by taxing the income of federal employees working on dams located in two states. Moreover, taxing authorities have broad discretion to classify subjects for taxation. *Jarvill v. City of Eugene*, 289 Or 157, 183, 613 P2d 1 (1980). The "power to classify includes the authority to subclassify persons included in the general class." *Id*. The immunity here at issue effects only a small number of persons. Generally, except for that and perhaps a handful of other provisions, all nonresidents working in Oregon pay taxes to this state.

## CONCLUSION

Plaintiff's 1998 wages paid by Spooner Mechanical Contractors, Inc., a Washington employer, are not exempt from taxation by Oregon under ORS 316.127(8) because Plaintiff is neither "paid by the United States" nor "an employee of the United States." Other laws, whether state or federal, exempting certain contractor's wages, are not applicable. Moreover, because the statute is not ambiguous, the court will not resort to secondary sources in an effort to discern legislative intent.

As to Plaintiff's constitutional challenges, for the reasons set out above, Oregon's law is not unconstitutional under either the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution or the Privileges and Immunities Clause of the Oregon Constitution.

IT IS THE DECISION OF THE COURT that Plaintiff's requested relief is denied. Plaintiff's wages are not exempt from taxation under ORS 316.127(8). The statute at issue (ORS 316.127(8)) is not unconstitutional on federal equal protection or state privileges and immunities grounds and Plaintiff does not come within the terms of the law.